GILLIARD v DEPARTMENT OF SOCIAL SERVICES

Docket No. 54462. Submitted February 4, 1982, at Lansing.—Decided May 25, 1982.

Charles Gilliard, an assistant payments worker for the Department of Social Services, was fired for allegedly engaging in welfare fraud. Gilliard was subsequently indicted on 11 charges of conspiracy to commit and the commission of welfare fraud. A jury acquitted him of all charges. The next day, he sought reinstatement to his former position, but the DSS refused his request and refused to give him a hearing on the charges leading to his discharge on the ground that he had not filed a grievance within ten days as the civil service rules require. Gilliard and the Michigan State Employees Association, Gilliard's union, filed suit against the DSS, the Civil Service Commission, and others in Ingham Circuit Court seeking judicial relief. The court denied plaintiffs the relief they sought. On appeal, the Court of Appeals upheld the decision of the circuit court. On appeal to the Supreme Court, that Court held that Gilliard was entitled to a hearing because the limitation period for filing a grievance under the civil service rules had been tolled from the time of his discharge until his acquittal on the criminal charges, 406 Mich 313 (1979). A hearing was held before an arbitrator selected under the civil service procedure, and the arbitrator ruled that Gilliard was entitled to reinstatement with full back pay. The arbitrator also ruled that Gilliard should not receive interest on the back pay and that the back

REFERENCES FOR POINTS IN HEADNOTES

[1] 15A Am Jur 2d, Civil Service §§ 10, 11.

[2] 29 Am Jur 2d, Evidence § 831.

Admissibility of lie detector test taken upon stipulation that the result will be admissible in evidence. 53 ALR3d 1005.

[3, 4] 15A Am Jur 2d, Civil Service §§ 88-90.

Backpay due to unjustified personnel action under provisions of 5 USCS § 5596. 45 ALR Fed 832.

Federal employee's right to award of interest under Back Pay Act (5 USCS § 5596). 37 ALR Fed 863.

[4] 15A Am Jur 2d, Civil Service § 77.

76 Am Jur 2d, Unemployment Compensation § 90.

pay award would be reduced by any outside earnings, unemployment benefits, and governmental assistance received by Gilliard. Gilliard and the DSS both sought to appeal to the Civil Service Commission, which denied leave to appeal to both parties on the ground that the commission defers to arbitration and because neither unfair or irregular arbitration procedures nor a result repugnant to the Civil Service Commission rules had been shown. Both Gilliard and the DSS appealed to the circuit court, which affirmed the commission's decision, Ray C. Hotchkiss, J. Gilliard and the MSEA appeal the circuit court's decision upholding the arbitrator's refusal to award interest and the deduction of unemployment compensation and ADC benefits from the award of back pay. DSS appeals the circuit court's affirmance of the arbitrator's finding that DSS failed to show that Gilliard was discharged for cause. The Civil Service Commission also filed a brief on appeal contending that both petitioners' and respondents' appeals should be dismissed and that the commission's decision to uphold the arbitration award should be affirmed. *Held:*

1. The Civil Service Commission's decision to uphold the arbitrator's award was supported by competent, material and substantial evidence.

2. The contention of the DSS that the arbitrator applied an incorrect standard of proof is rejected. The commission is free to adopt any grievance or appellate procedure it finds appropriate as long as it does so consistently with the requirements of due process.

3. The arbitrator did not err by excluding evidence of a polygraph examination taken by one of the witnesses for the DSS. The results of polygraph examinations are inadmissible under the circumstances of this case.

4. The arbitrator erred in failing to award interest on the back pay award from the date of Gilliard's wrongful discharge. The case is remanded to the circuit court with directions to modify the award by adding interest from the date of Gilliard's discharge.

5. The arbitrator did not err in ruling that unemployment compensation and ADC benefits should be deducted from the award of back pay.

Affirmed in part, reversed in part, and remanded.

1. Civil Service — Appeal — Due Process.

The Civil Service Commission, having full and absolute power over civil service employees, is free to adopt any grievance or

appellate procedure it finds appropriate as long as it does so consistently with the requirements of due process (Const 1963, art 11, § 5).

2. EVIDENCE — POLYGRAPH EXAMINATIONS.

The results of polygraph examinations are generally inadmissible into evidence.

3. CIVIL SERVICE — WRONGFUL DISCHARGE — ARBITRATION — BACK PAY — INTEREST.

An award of back pay by an arbitrator in a civil service hearing involving an alleged wrongful discharge of an employee should include interest on the back pay from the date of the employee's wrongful discharge (MCL 438.7; MSA 19.4).

4. CIVIL SERVICE — WRONGFUL DISCHARGE — ARBITRATION — REINSTATEMENT — BACK PAY — UNEMPLOYMENT COMPENSATION BENEFITS — ADC BENEFITS.

Unemployment compensation and ADC benefits should be deducted from an arbitrator's award of back pay in a case involving the wrongful discharge of a state civil service employee where the employee received such benefits in the interim between his discharge and his reinstatement.

*Fraser, Trebilcock, Davis & Foster, P.C.* (by *Michael E. Cavanaugh* and *William R. Landgraf),* for Michigan State Employees Association and Charles Gilliard.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Janis Meija* and *Robert N. Rosenberg,* Assistants Attorney General, for the Department of Social Services.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Varda N. Fink,* Assistant Attorney General, for the Civil Service Commission.

Before: BEASLEY, P.J., and T. M. BURNS and E. A. QUINNELL,* JJ.

* Circuit judge, sitting on the Court of Appeals by assignment.

PER CURIAM. Petitioner Charles Gilliard began working as an assistant payments worker for the Department of Social Services on October 21, 1973. On September 25, 1975, the DSS sent petitioner the following telegram:

"This is to inform you that your employment with the Michigan Department of Social Services is terminated for reasons of conduct unbecoming a state employee as evidence indicates that you are involved in a welfare fraud. This dismissal action is effective at the close of business hours on September 24, 1975.
"John Smith, Director
"Office of Administration
"Michigan Department of Social Services"

The DSS subsequently summarized the alleged activities which led to petitioner's dismissal in the following manner:

"1. Mr. Gilliard approached ADC client Dianne Davison in February, 1975, and requested her complicity in cashing an ADC warrant to be issued by Mr. Gilliard in another person's name. Mr. Gilliard indicated that proceeds would then be split between Mr. Gilliard and Ms. Davison.
"2. Mr. Gilliard failed to close client Linda Jackson's case at her request in December, 1974, and, instead, forwarded warrants in her name to another address where they were received by client Delores Johnson who cashed the warrants and split the proceeds with Mr. Gilliard. These warrants were issued bi-weekly from January 9, 1975, until April 8, 1975."

On April 6, 1976, petitioner was indicted on 11 charges of conspiracy to commit and the commission of welfare fraud. On September 28, 1976, a jury acquitted him on all charges. The next day, petitioner sought reinstatement to his former position, but the DSS refused his request. The DSS

also refused to give him a hearing on the charges leading to his discharge on the ground that he had not filed a grievance within ten days in accordance with the requirements of the civil service rules.

Petitioner thereupon filed a petition for review in the circuit court, which denied relief. He fared no better on appeal to this Court. However, the Michigan Supreme Court, in *Michigan State Employees Ass'n v Civil Service Comm,* 406 Mich 313; 279 NW2d 530 (1979), held that petitioner was entitled to a hearing because the limitation period for filing a grievance under the civil service rules had been tolled from the time of his discharge until his acquittal on the criminal charges.

On January 2, 3, and 4, 1980, petitioner finally received the hearing, for which he had fought so long, before an arbitrator. On March 19, 1980, the arbitrator ruled that petitioner was entitled to reinstatement with full back pay. However, the arbitrator did not award interest on the back pay and ruled that the award would be reduced by any outside earnings, unemployment benefits, and governmental assistance.

Both petitioner and DSS sought to appeal the arbitrator's award to the Civil Service Commission which denied leave to appeal to both parties "because the commission defers to arbitration and because neither unfair or irregular arbitration procedures nor a result repugnant to commission rules has been shown".

DSS and petitioner then appealed the commission's decision upholding the arbitration award to the circuit court, which affirmed. Petitioners Gilliard and the Michigan State Employees Association appeal as of right the arbitrator's refusal to award interest and the arbitrator's deduction of unemployment compensation and ADC benefits form the

back pay award. Respondent DSS appeals the arbitrator's finding that DSS failed to show that Gilliard was discharged for cause. Respondent Civil Service Commission contends that petitioners' and DSS's claims should be dismissed and that the commission's decision to uphold the arbitration award should be affirmed.

We initially observe that the DSS may lack standing to pursue the instant appeal. The DSS is essentially a subordinate of the Civil Service Commission. Since the commission's decision amounts to a decision by the State of Michigan, a subordinate agency would ordinarily lack standing to challenge such a decision absent express statutory authority. We have not located any such express authority. Despite our reservations about the DSS's capacity to appeal,[1] we shall address the merits of its claims of error.

The DSS initially contends that the decision of the Civil Service Commission denying review of the arbitrator's decision was not supported by competent, material, and substantial evidence on the whole record and must therefore be reversed. Although the government's case against petitioner was strong, there were serious questions about the credibility of crucial government witnesses. Resolution of this case turned upon the trier of facts' assessment of the credibility of the witnesses, and the arbitrator apparently chose to believe petitioner's version of the facts. We find that the commission's decision to uphold the arbitrator's award was supported by competent, material, and substantial evidence.

DSS also contends that the arbitrator applied an

---

[1] In *Groehn v Corporation & Securities Comm,* 350 Mich 250; 86 NW2d 291 (1957), the Supreme Court addressed the merits of a departmental employer's appeal of a commission decision, but did not mention the standing issue.

incorrect standard of proof—"beyond a reasonable doubt"—against it, rather than a "preponderance of the evidence" standard. Although the arbitrator stated that he was applying a "clear and convincing evidence" standard, he relied upon several cases which embraced the "reasonable doubt" standard. We need not determine, however, which standard was employed by the arbitrator since the commission is free to approve the use of a higher standard of proof in a case involving allegations of criminal conduct (or, for that matter, in any case). The commission is free to adopt any grievance or appellate procedure it finds appropriate as long as it does so consistently with the requirements of due process since it has full and absolute power over civil service employees. Const 1963, art 11, § 5.

Finally, the DSS contends that the arbitrator committed error by excluding evidence of a polygraph examination taken by one of their witnesses. We disagree. Subject to one carefully drawn exception (which is inapplicable to the case at bar),[2] Michigan courts have consistently held that the results of polygraph examinations are inadmissible. See, *e.g., People v Liddell,* 63 Mich App 491; 234 NW2d 669 (1975).

We now turn to petitioner's allegations of error. First of all, petitioner contends that the arbitrator erred by failing to award interest on the back pay award from the date of his wrongful discharge. We agree. MCL 438.7; MSA 19.4 provides:

"In all actions founded on contracts express or implied, whenever in the execution thereof any amount in money shall be liquidated or ascertained in favor of either party, by verdict, report of referees, award of arbitrators, or by assessment made by the clerk of the

---

[2] See *People v Barbara,* 400 Mich 352; 255 NW2d 171 (1977).

court, or by any other mode of assessment according to law, it shall be lawful, unless such verdict, report, award, or assessment shall be set aside, to allow and receive interest upon such amount so ascertained or liquidated, until payment thereof, or until judgment shall be thereupon rendered; and in making up and recording such judgment, the interest on such amount shall be added thereto, and included in the judgment."

In *Wilson v Doehler-Jarvis Div of National Lead Co,* 358 Mich 510; 100 NW2d 226 (1960), the Supreme Court held that this statute permits the circuit court to award interest on a workers' compensation award, finding that the right to such an award arises out of a statutorily imposed contract between the worker and employer. Interest was awarded from the date the claim should have been paid.

We find the *Wilson* rationale applicable to the case at bar. The award of back pay was based upon a contract between petitioner and the DSS. In the words of the *Wilson* Court:

"Who benefited from the delay in payment here? Who, if anyone, suffered any loss? In the instant case the disputed claim for compensation has been in the throes of litigation for over 5 years. In the meantime the defendant-appellant has had the possession and use of funds that it now appears rightfully belonged all along to the plaintiff, while the plaintiff (theoretically if not actually) had to raise money elsewhere (and presumably pay interest on it) to meet the daily necessities of life. In a real sense, then, the employee and his dependents have been obliged to help subsidize the employer in the long, expensive fight for possession of the money thus wrongfully withheld." 358 Mich 516-517.

Similarly, petitioner should not be forced to bear

the burden of subsidizing his employer during the pendency of this litigation.[3] Accordingly, we remand this case to the circuit court with directions to modify the award by adding interest from the date of petitioner's discharge.

Petitioner also contends that unemployment compensation and ADC benefits were erroneously deducted from the arbitrator's award. We cannot agree. Commission rules clearly mandate such deductions.[4] Citing no relevant authority in support of his position, petitioner apparently urges this Court to strike down these rules. We decline to do so. Such a double recovery would be manifestly unfair in the context of a recovery for breach of contract, and particularly so in the present case because both the principal recovery and the collateral benefits would be paid by the same party, the state.

Affirmed in part, reversed in part, and remanded for modification of the award in accordance with this opinion. Petitioner may tax costs.

---

[3] We note that the *Wilson* case was decided against a background of considerably lower interest and inflation rates than those prevailing in the present period. Hence, an award of interest is even more necessary to compensate petitioner for the actual damages he has sustained.

[4] The relevant rules provide:

"9-2609 Awards. All awards of back pay and benefits, even when not expressly stated, shall be subject to the rules and regulations of the commission, and shall be subject to:

"9-2609a Deduction of earnings in other employment or self-employment.

"9-2609b Deduction of benefits received from employer contributory income protection insurance.

"9-2609c Deduction of benefits received under the following government assistance programs:

"(1) Worker's Compensation

"(2) Unemployment Compensation

"(3) Social Security

"(4) Social Welfare".