## YORK v CIVIL SERVICE COMMISSION

Docket No. 246137. Submitted September 9, 2004, at Lansing. Decided September 30, 2004, at 9:05 A.M.

Judy York, an assistance payment worker (APW) for the Family Independence Agency, sought to be reclassified from a paraprofessional status to a professional status. The Department of Civil Service denied that request. Petitioner then filed a technical appeal in which she sought to be reclassified to either the position of social services specialist (SSS) or financial independence specialist (FIS). A technical appeals officer (TAO) determined that the petitioner could not be reclassified to the FIS position because that position did not exist when the petitioner first requested reclassification. With respect to the SSS position, the TAO determined that the petitioner did not have the experience or education to merit reclassification to that position. The petitioner then filed an appeal to the Employment Relations Board (ERB). The ERB remanded the matter to the TAO for an explanation why only some APW employees had been reclassified to the FIS position. The TAO responded that certain APW employees with the requisite experience and education were promoted to the FIS position rather than reclassified. The petitioner again appealed to the ERB. The ERB, although affirming the denial of petitioner's reclassification request by the TAO, again remanded the matter for further study of the similarities between the APW and FIS positions. The petitioner appealed to the Civil Service Commission, which affirmed the decision of the TAO in its entirety and reversed the ERB's remand for further study. The petitioner then appealed to the Ingham Circuit Court, claiming that the commission violated Const 1963, art 11, § 5 and art 6, § 28 when it enforced Civil Service Commission Rule 2-20B.4, which prohibited the TAO from holding hearings on technical appeals, that the commission denied the petitioner due process by denying her request for a hearing, and that the commission denied her due process by reversing the ERB order remanding for further study whether the APW position was properly classified. The court, Lawrence M. Glazer, J., ruled that the petitioner did not have a property interest in job reclassification and no hearing was therefore required, that the commission's appeal process afforded due

process, and that the commission had a rational basis for its determination. The petitioner appealed by leave granted.

The Court of Appeals *held*:

1. The commission, pursuant to Const 1963, art 11, § 5, has absolute power over civil service employees and plenary power to adopt any grievance or appeals procedure for civil service employees provided the requirements of due process are satisfied. The commission has not abdicated its responsibility with respect to reviews of technical appeals by its Rule 2-20B.4, which precludes a TAO from holding a hearing. Drawing logically from the language of Const 1963, art 6, § 28, which contemplates situations in which a court reviews administrative proceedings that do not require hearings, a hearing is not required for every grievance in order to facilitate review by the commission.

2. The petitioner, as a civil service employee, under Michigan law, is guaranteed continued employment absent just cause for dismissal, and, therefore, has a property interest in her job that implicates due process protections. However, the petitioner does not have a property interest in job reclassification because it neither involves job security nor promotes the policy of favoring a stable public work force. To that end, the petitioner's desire for job reclassification is a unilateral expectation of a benefit that is not a property interest implicating due process protections. Accordingly, the petitioner does not have a due process right to a hearing.

3. The trial court correctly concluded that the commission had a rational basis for its determination that the APW position is not identical to the FIS position. To the extent the petitioner asks this Court to reverse the commission's determination and substitute its judgment regarding the classification of civil service employees, the Court is not empowered to do so. Classification of civil service employees is the sole province of the commission.

Affirmed.

1. CIVIL SERVICE — CIVIL SERVICE COMMISSION — GRIEVANCES OR APPELLATE PROCEDURES — DUE PROCESS.

The Civil Service Commission may adopt any grievance or appellate procedure to be followed by state civil servants as long as the procedures are consistent with the requirements of due process (Const 1963, art 11, § 5).

2. CIVIL SERVICE — JOB CLASSIFICATIONS — RECLASSIFICATIONS.

A state civil servant has a property interest and is entitled to due process protections in continued employment absent just cause for

dismissal, but not in a unilateral expectation or hope for a job reclassification (Const 1963, art 1, § 17).

*Scheff & Washington, P.C.* (by *George B. Washington*), for the petitioner.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Laura A. Cook*, Assistant Attorney General, for the respondent.

Before: WHITBECK, C.J., and SAWYER and SAAD, JJ.

SAAD, J. Respondent Family Independence Agency (FIA) employs petitioner Judy York as an assistance payment worker (APW). Petitioner sought to be reclassified in a higher-paying job classification, and the Department of Civil Service denied her request. Petitioner filed a technical appeal within the department, which was also denied. Petitioner appealed that decision to the Employment Relations Board (ERB) and then to respondent Civil Service Commission (CSC). Both appeals were denied. Petitioner sought judicial review of the CSC's decision in the circuit court, which affirmed the CSC's decision. Petitioner filed a delayed application for leave to appeal the circuit court's order affirming the CSC's decision, which application we granted.[1] We affirm the circuit court's order.

### I. FACTS AND PROCEDURAL HISTORY

Petitioner is employed by the FIA as an APW. In July 1995, petitioner and other APWs sought reclassification from paraprofessional to professional status. After it reviewed the situation, the Department of Civil Service

---

[1] Unpublished order of the Court of Appeals, entered July 18, 2003 (Docket No. 246137).

concluded that none of the duties of an APW was "professional" in nature, and petitioner's request was denied.

Petitioner then filed a technical appeal of the Department's decision, and argued for the first time that she should be reclassified as a social services specialist (SSS) or as a family independence specialist (FIS). The FIS classification was not created until February 1996, and thus did not even exist at the time petitioner filed her request to be reclassified. For that reason, the technical appeals officer (TAO) ruled that he could not consider reclassifying petitioner as an FIS. He further concluded that APWs did not have the relevant education or experience to merit being reclassified as SSSs.

Petitioner appealed to the ERB, which remanded to the TAO for answers to the question why some APWs were reclassified as FISs when the FIS position was created, while other APWs were not. The TAO explained on remand that some of the APWs possessed the necessary education and experience to warrant reclassification while others did not; in effect, the former group was promoted as opposed to reclassified.

Petitioner again appealed to the ERB, which affirmed the TAO's denial of petitioner's reclassification request, but remanded for further study of similarities between the APW and FIS positions. However, on appeal to the CSC, the CSC affirmed the TAO's decision in its entirety and reversed the ERB's remand for further study.

Petitioner then appealed to the Ingham Circuit Court and alleged (1) that the CSC violated Const 1963, art 11, § 5 and art 6, § 28 when it enforced CSC Rule 2-20B.4, which provides that TAOs shall not hold hearings when deciding technical appeals; (2) that the CSC denied petitioner due process, Const 1963, art 1, § 17, when it denied her a hearing on her request to be reclassified;

and (3) that the CSC denied petitioner due process when it reversed the ERB's order for further study with respect to whether the FIA's APWs were properly classified. The circuit court ruled that petitioner had no property interest in job reclassification and that a hearing therefore was not required; that even if the court were to rule that petitioner had a right to due process, the CSC's appeal process had afforded petitioner due process; and that the CSC's order had a rational basis. Accordingly, the circuit court entered an order that affirmed the CSC's decision.

This Court granted petitioner's application for leave to appeal the circuit court's order on July 18, 2003.[2]

## II. STANDARD OF REVIEW

Article 6, § 8 of the Michigan Constitution provides the standard of review that a circuit court must apply when reviewing decisions of the CSC:

> All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record.[3]

In turn, we assess the circuit court's review of a CSC decision to " 'determine whether the lower court applied correct legal principles and whether it misapprehended

---

[2] See n 1.

[3] See *Hanlon v Civil Service Comm*, 253 Mich App 710, 716; 660 NW2d 74 (2002), quoting *Boyd v Civil Service Comm*, 220 Mich App 226, 232 n 3, and Const 1963, art 6, § 8.

or grossly misapplied the substantial evidence test to the agency's factual findings.' " *Hanlon v Civil Service Comm*, 253 Mich App 710, 716; 660 NW2d 74 (2002), quoting *Boyd v Civil Service Comm*, 220 Mich App 226, 234; 559 NW2d 342 (1996).

Whether a party was denied due process as guaranteed by Const 1963, art 1, § 17 is, of course, a constitutional question, and we review constitutional questions de novo. *In re Ayres*, 239 Mich App 8, 10; 608 NW2d 132 (1999).

### III. ANALYSIS

#### A. CSC Rule 2-20B.4

Petitioner argues that CSC Rule 2-20B.4 violates Const 1963, art 11, § 5 and art 6, § 28. Rule 2-20B.4 provides:

> If the technical appeal is not administratively dismissed, it shall be referred to a technical appeal officer for disposition. The technical appeal officer shall conduct an expeditious review of the technical appeal in accord with these rules and regulations issued by the state personnel director. The technical appeal officer shall decide the matter based on the departmental records and the written submissions of any interested persons. *The technical appeal officer is not authorized to conduct a hearing*, but may meet with the technical complainant and other interested persons to review and discuss the appeal. The technical appeal officer shall issue a written technical appeal decision. [Emphasis added.]

Const 1963, art 11, § 5 provides, in relevant part:

> The [CSC] shall classify all positions in the classified service according to their respective duties and responsibilities, fix rates of compensation for all classes of positions, approve or disapprove disbursements for all personal services, determine by competitive examination and perfor-

mance exclusively on the basis of merit, efficiency and fitness the qualifications of all candidates for positions in the classified service, make rules and regulations covering all personnel transactions, and regulate all conditions of employment in the classified service.

The CSC has "broad authority to regulate the state classified service." *Hanlon, supra* at 717-718, citing *Viculin v Dep't of Civil Service,* 386 Mich 375, 393; 192 NW2d 449 (1971). The CSC has "absolute" and "plenary power" to "determine, consistently with due process, the procedures by which a state civil service employee may review his grievance." *Id.* Michigan's Constitution affords the CSC the freedom " 'to adopt any grievance or appellate procedure it finds appropriate as long as it does so consistently with the requirements of due process since it has full and absolute power over civil service employees.' " *Id.,* quoting *Gilliard v Dep't of Social Services,* 135 Mich App 579, 585; 354 NW2d 263 (1982). "[T]he CSC may provide for whatever assistance it requires to efficiently perform its duties, including assistance from hearing boards and administrative officers." *Id.* at 721. However, " 'the final authority and responsibility remain its own despite these delegations, and its investigative powers in aid of its final decision remain as broad as its responsibility.' " *Id.,* quoting *Groehn v Corp and Securities Comm,* 350 Mich 250, 261; 86 NW2d 291 (1957).

Petitioner maintains that, by denying civil service employees a right to a hearing with respect to job classification, the CSC effectively has abdicated its responsibility to make fully informed final decisions. Petitioner also says that absent hearings, the TAO cannot make meaningful findings of fact and the CSC cannot properly review the decisions of its TAOs. Petitioner also claims that the absence of hearings makes judicial review of the CSC's decisions impossible. Petitioner says

that these deficiencies resulted in a violation of her due process rights. Petitioner says that only a full hearing on the record can correct these alleged inadequacies of Rule 2-20B.4.

While Rule 2-20B.4 expressly prohibits TAOs from conducting hearings in technical appeals, it clearly requires TAOs to consider "departmental records and the written submissions of any interested persons," including, presumably, employees seeking technical appeals as petitioner does here. In asserting that the CSC has somehow abdicated its responsibility with respect to review of technical appeals, petitioner does not argue that the CSC failed to review the findings and conclusions of either the ERB or the TAO. Nor does petitioner argue that the TAO failed to consider any evidence in reviewing her technical appeal—to the contrary, petitioner states that here there was ample documentation provided by both sides.[4]

We reject petitioner's claims that Const 1963, arts 6 and 11 require the CSC to hold a hearing and that Rule 2-20B.4 is unconstitutional. The language in article 6, "in cases in which a hearing is required," clearly contemplates situations in which courts would review administrative proceedings that *do not* require hearings. Logically, then, we must reject petitioner's claim that this section requires hearings in every case to facilitate CSC or judicial review.[5]

Accordingly, we hold that CSC Rule 2-20B.4 does not violate Const 1963, art 11, § 5 or art 6, § 28.

---

[4] However, petitioner contends that the documentation is conflicting, and that the TAO is not capable of determining the credibility of the documentation without holding a hearing.

[5] Moreover, were we to hold that a hearing was required, which we do not, we would nevertheless reject petitioner's demand for a full hearing on the record, for reasons we will explain in greater detail below.

### B. PETITIONER'S RIGHT TO A HEARING

Petitioner maintains that the denial of a full hearing on the record violated her constitutional right to due process as guaranteed by Const 1963, art 1, § 17. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment [sic]."[6] *English v Blue Cross Blue Shield of Michigan*, 263 Mich App 449, 459; 688 NW2d 523 (2004), quoting *In re Brock*, 442 Mich 101, 110-111; 499 NW2d 752 (1993), quoting *Mathews v Eldridge*, 424 US 319, 332, 334; 96 S Ct 893; 47 L Ed 2d 18 (1976) (internal quotations omitted). Due process requires the " 'opportunity to be heard' "at a meaningful time and in a meaningful manner." ' " *English, supra* at 459, quoting *Mathews, supra* at 333 (citations omitted). "[A]n oral hearing is not necessary to provide a meaningful opportunity to be heard." *English, supra* at 460.

> "Only when the property interest involved was the potential deprivation of the financial means by which to live has the Court insisted on an evidentiary hearing . . . . 'Due process can be interpreted to require a hearing to the extent and only to the extent that a party will have the chance to know and to respond to the evidence against him, without requiring a hearing "on the record." ' " [*English, supra* at 460-461, quoting *Westland Convalescent Ctr v Blue Cross & Blue Shield of Michigan*, 414 Mich 247, 270-271; 324 NW2d 851 (1982) (internal citations omitted).]

To have a protected property interest, one must possess "more than a unilateral expectation to the claimed

---

[6] Though petitioner claims a violation of due process under the state, and not the federal, constitution, state and federal due process protections are generally coextensive. *Hanlon, supra* at 722-723.

interest; the claimant must have a legitimate claim of entitlement." *Hanlon, supra* at 723.

### 1. PETITIONER'S ALLEGED PROPERTY INTEREST IN RECLASSIFICATION

In *Hanlon*, the petitioners requested reclassification from the CSC, as petitioner does here. This Court found it unnecessary to determine whether the petitioners had a property interest protected by due process because it concluded that the administrative review process that the CSC provided for the petitioners' appeal was sufficient to satisfy due process even if this Court were to have held that the petitioners did have a protected property interest. *Hanlon, supra* at 723.

Under Michigan law, civil service employees are guaranteed continued employment absent just cause for dismissal. This property interest is sufficient to merit due process protections. *Michigan State Employees Ass'n v Dep't of Mental Health*, 421 Mich 152, 160-161; 365 NW2d 93 (1984). This serves "the policy favoring a stable public work force." *Id.* at 162. Unlike a civil service employee's state-protected interest in continued employment, reclassifying a current civil service employee from one job classification to another neither deals with job security nor does it promote a stable work force. Rather, a civil service employee's petition for reclassification represents that employee's unilateral aspiration for a different job classification, a quest for which any given employee may or may not possess the requisite education, training, experience, job performance, or other qualifications. Here, the CSC's denial of petitioner's request for reclassification does not implicate her job security interests; rather, the denial affects only her unilateral hope that she might be reclassified into a higher-paying position. This unilateral expecta-

tion or hope for reclassification is not a property interest protected by the Michigan or federal constitution. See *St Louis v Michigan Underground Storage Tank Financial Assurance Policy Bd*, 215 Mich App 69, 74; 544 NW2d 705 (1996), citing *Williams v Hofley Mfg Co*, 430 Mich 603, 610; 424 NW2d 278 (1988), citing *Arnett v Kennedy*, 416 US 134, 165; 94 S Ct 1633; 40 L Ed 2d 15 (1974) ("For a property interest in a benefit . . . to exist, a person must have more than just a need, desire for, or a unilateral expectation of the benefit."); see also *Hanlon*, *supra* at 723, citing *Williams*, *supra*, citing *Arnett*, *supra* ("To have a property interest protected requires more than a unilateral expectation to the claimed interest.").

Accordingly, we hold that petitioner does not have a constitutionally protected property interest in reclassification.

### 2. ADEQUACY OF ADMINISTRATIVE PROCEEDINGS

Because we hold that petitioner has no protected property interest, we also hold that the due process guarantee to a hearing is not applicable. See *Hanlon*, *supra* at 723. Accordingly, we decline to address the issue whether the circuit court correctly ruled that the appellate procedures provided by the CSC to petitioner here would satisfy due process.[7]

---

[7] However, were we to hold that the due process guarantee was applicable here, which we do not, we would nevertheless reject petitioner's assertion that due process requires a full, trial-like evidentiary hearing on the record. Petitioner has not alleged that the CSC's denial of reclassification has deprived her "of the financial means by which to live," nor could she reasonably do so. Accordingly, we would hold that due process would require a hearing " ' "to the extent and only to the extent that [petitioner would] have a chance to know and respond to the evidence against [her], without requiring a hearing 'on the record." ' " *English,*

### C. CSC'S REVERSAL OF THE ERB'S ORDER
### FOR FURTHER STUDY OF CLASSIFICATIONS

Petitioner says that the circuit court should have reversed the CSC's decision to reverse the ERB's order for further study of the alleged similarities between the APW and FIS classifications. Petitioner further argues that we should reverse the decisions of the circuit court and the CSC, and remand for a hearing to determine whether APWs perform the exact same work as FISs for lesser pay.

The circuit court concluded that the CSC had a rational basis for its finding that the work of APWs was not identical to FISs.[8] Because this Court has held that it is constitutionally permissible for the CSC to employ a rational basis standard in its review of the decisions of TAOs and the ERB, *Hanlon, supra* at 717-722, and because our review of the record shows that neither the CSC nor the circuit court acted in an arbitrary or capricious manner, or abused their discretion, we conclude that the circuit court correctly applied the law during its review of the CSC's decision and correctly affirmed the CSC.

Furthermore, petitioner's claim, at its heart, seeks to revise the CSC's classification system. Petitioner alleges that the APW and FIS classifications are identical, and that all APWs should be reclassified as FISs. Petitioner asks this Court to reverse the CSC's refusal to do so. Were we to reverse the decisions of the CSC as petitioner requests, we would be substituting our judgment with respect to the

---

*supra* at 461, quoting *Westland, supra* at 270-271. As stated previously, we decline to address the issue whether the CSC's procedure here would satisfy this requirement.

[8] The court noted that some APWs were reclassified as FISs because their work experience qualified them for the reclassification, not because their duties are the same. We further note that while the record shows that *some* of the job responsibilities of FISs are identical to those of APWs, FISs have *additional* job responsibilities that APWs do not have.

classification of civil service employees for the CSC's. This would not only infringe the CSC's "absolute," "plenary," and constitutionally mandated authority to classify its employees, but it would also violate the separation of powers doctrine.

> "The powers of government are divided into three branches; legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution." [*Judicial Attorneys Ass'n v Michigan*, 459 Mich 291, 296; 586 NW2d 894 (1998), quoting Const 1963, art 3, § 2.]

Our Supreme Court further stated:

> [S]tate employees working for the Legislature are unquestionably under the exclusive control of the Legislature, those working for the executive branch, under the exclusive control of the executive branch, and those working for the Supreme Court and the Court of Appeals, under the exclusive control of the judicial branch. [*Id.* at 298.]

While there is constitutional authority for limited judicial review of the CSC's judicial and quasi-judicial decisions with respect to its employees, decisions with respect to administrative matters, such as the classification of civil service employees, are the sole province of the CSC. The CSC has the sole constitutional authority to decide whether to revisit its job classification system, and in reversing the ERB's order, it has declined to do so. This Court may not usurp that authority by now ordering the Department of Civil Service to hold hearings on the issue of the APW and FIS classifications, as petitioner asks us to do here.

Moreover, were we to grant petitioner's request, we would create an environment where the courts of this state would be constantly called on to micromanage and second-guess the CSC's decisions with respect to the

classification of civil service employees. This we cannot do, especially given the clear constitutional mandate that the CSC be afforded the sole, absolute power to classify this state's civil service employees.

Accordingly, we hold that the circuit court properly affirmed the CSC's decision to reverse the ERB's order for further study of the APW and FIS job classifications.

Affirmed.